THE WICHITA & WESTERN RAILROAD COMPANY V. BARBARA KUHN.

1. CHANGE OF VENUE — *Transcript* — *Trial Without Original Files, Not Error.* Where a civil action is taken on a change of venue from the district court of one county to that of another, it is only necessary for the clerk of the court to transmit a true and correct transcript of the files and proceedings, and it is not error for the court to proceed to the trial of the cause on said transcript and without the original files.

2. VALUE — *Opinion of Witnesses, Admitted in Evidence.* Upon an appeal from an award of damages caused by the appropriation of a right-of-way through a farm for railroad purposes, and a witness is called who testified that he was well acquainted with the farm before, at the time and after the appropriation of the right-of-way by the railroad company, and is acquainted with the value of land in that vicinity, and is then asked, "How much less, in your opinion, was this farm worth after the railroad company had established their track through it?" This question is objected to, and the objection overruled, and the witness permitted to answer. *Held,* not error.

3. RIGHT-of-WAY — *Measure of Damages.* The measure of damage caused by the appropriation of a right-of-way by a railroad, is the difference in value before the appropriation and immediately thereafter, without considering or taking into account any benefit that may be derived therefrom by the owner.

4. DAMAGE, *Elements of, Proper to go to Jury.* On an appeal from an assessment of damage done to a farm by reason of the appropriation of a right-of-way through it by a railroad company, and where it is shown at the time of the trial that the railroad is completed across the farm, it is then competent and proper to assume that the railroad was constructed as contemplated at the time of the condemnation proceedings, and all damage that is apparent which will result in injury to the farm, such as stopping the flow of surface-water, forming stagnant pools along the side of or on the right-of-way, and the like, are elements of damage proper to go to the jury.

5. DAMAGE — *Interest* — *Proper Instruction.* It is proper for the court to instruct the jury on the trial of an action on appeal from an award of damages for the appropriation of a right-of-way by a railroad, that if they find for the plaintiff they will also allow interest on said amount so found, at seven per cent. from the date of the filing of the award, provided that the sum so found exceeds a sum named, although said sum named in said instructions is the amount allowed by the commissioners in their award of damages.

6. AGENT—*Testifying as to Authority.* An agent may testify as to his authority to act for his principal, and this rule is not changed by the fact that the agent is the husband of the plaintiff.

*Error from Reno District Court.*

THE Wichita & Western Railroad Company, by proper proceedings, condemned a strip of land through the farm of *Barbara Kuhn*, in Sedgwick county, and the commissioners awarded her $510 as damages, from which award she appealed to the district court. The railroad company procured a change of venue from Sedgwick to Reno county. Trial at the May Term, 1885, and verdict and judgment for the plaintiff for $1,593.28. *The Company* brings the case here.

*Geo. R. Peck, A. A. Hurd,* and *Houston & Bentley,* for plaintiff in error.

*John R. Parsons,* for defendant in error.

Opinion by CLOGSTON, C.: The plaintiff in error now complains of the judgment of the court below upon appeal from the award of damages for the right-of-way appropriated by it. The errors complained of are, first, that the clerk of the district court of Sedgwick county, in transferring the cause, made a transcript of the papers and proceedings, and did not transmit the original papers and files in said cause to the clerk of the district court of Reno county. It is not claimed that the transcript was not a correct copy of the papers and files, but plaintiff in error insists that it was entitled to have the original papers in the cause, and that it was error to compel defendant to go to trial upon a transcript, or copy thereof. Our attention has not been called to any statute, and we have been unable to find any, requiring the clerk to transmit the original files on a change of venue in a civil action; in fact, there are no provisions of statute regulating the manner in which the cause should be transferred — whether the original papers are to be sent, or a transcript made of them. The statute simply provides that under certain circumstances a change of venue shall be granted. The object of this change is, that the cause

may be tried where no objections are known to exist to prevent a fair and impartial trial on the merits. This object, then, could be accomplished as well upon a transcript as upon the original files. If the transcript did not contain a correct copy of all the files, then upon a proper showing it could have been corrected. Section 148, chapter 25, Comp. Laws of 1879, provides:

1. Change of venue — transcript — trial without original files, not error.

"The clerks of the district courts shall do and perform all duties that may be required of them by law, or the rules and practice of the courts, and shall safely keep and preserve all papers, process, pleadings and awards that may be filed, or by law placed in their respective offices."

This section defines the duties of the clerk of the district court in regard to the files and papers of his office; and unless there is some provision of the statute authorizing the clerk, in exceptional cases, to transmit the original files, then he must retain them in his office.

The second objection is, that the court permitted John Kuhn, the husband of the plaintiff, to testify to the acts performed by him at the request of the plaintiff, as her agent. Counsel do not seem to object to the testimony itself, but to the fact that the court permitted the husband to testify to the agency, and to what acts he had done under and by virtue of his authority as agent of his wife. Plaintiff insists that this agency could only be established by some other witness, and not by the husband or the wife. The statute provides that the husband and wife shall be incompetent to testify in any action in which either is a party, "except concerning transactions in which one acted as the agent of the other, or where they are joint parties and have a joint interest" in the action. So far then as the statute permits, they could testify concerning those matters excepted, as freely as if there were no restrictions against their testifying. "An agent may testify under oath as to his authority to act for the principal." (*French v. Wade*, 35 Kas. 391.)

6. Husband or wife, testifying as agent.

Again, plaintiff in error charges that the court erred in permitting witnesses to testify to the measure of damages to the

plaintiff's land.   R. J. Razey was permitted to answer the following question, asked by the defendant.

"Q. How much less, in your opinion, is this farm worth after the railroad company had established its track through it, irrespective of any benefits from any improvements proposed by the railroad company to be derived from said track, taking into consideration all incidental loss, inconveniences and damages, present and prospective, which may reasonably be expected, or shown to exist from the maintaining of said railroad track, to be continued permanently?   A. About $2,100."

Counsel contend that the measure of damages is the difference in value of the land taken at the time it is condemned, and its value immediately thereafter; that is, how much less it was worth thereafter.   We think this question comes fairly under that rule.   In other words, instead of asking the witness the value before and after, the question was, how much less was the farm worth after than before?   To answer this the witness must determine in his mind what it was worth before, and how much it was worth afterward, and the difference would be his answer.   The witness was shown to have been well acquainted with the land before and after the construction of the railroad through it, and of the value of the farm and the land taken. (*K. C. Rly. Co. v. Allen*, 24 Kas. 33; *L. T. & S. W. Rly. Co. v. Paul*, 28 id. 816.)

*2. Value; opinion of witness.*

The next objection urged is, that the court refused to permit L. B. Bunnell to answer the following questions asked by the defendant below:

"Now in what respect is the farm of the plaintiff benefited or injured by the railroad, if any, outside of any proposed benefits to them in the commencement of the right-of-way proceedings?

"In what manner, if any, will the plaintiff's premises be injured or benefited by reason of the ditches on the north and on the south side of the grade on the right-of-way?"

The objection was sustained to both of these questions. The only purpose in asking these questions was to bring before the jury the benefits, if any, resulting to the plaintiff by reason

of the ditches constructed through her land. This was not competent. It was not material to know, or determine, or bring the knowledge before the jury in any manner, any value or benefit the plaintiff would derive by reason of the construction of this road. The question was, what, if any, was the damage to the farm by the construction of this road over it? — and the question of benefits was not to be taken into consideration. We think the court properly sustained the objection to these questions.

3. Right-of-way —measure of damages.

The next complaint is to the refusal of the court to instruct the jury as follows:

" 5. The jury have no right to take into consideration any item or element of damages which the plaintiff may have, or may hereafter sustain, by reason of defendant's embankments obstructing or in any way stopping the flow of surface-water upon plaintiff's land or defendant's right-of-way, and thus collecting in stagnant pools such surface-water either upon plaintiff's land or defendant's right-of-way."

The instruction was properly refused. In determining the damages to a farm, it is proper to take into consideration every element of damage that can be reasonably antici- pated, or might be reasonably anticipated, before the road is built, and what really does exist and is apparent after the road is constructed. This includes the inconvenience · of crossing, the raising of embankments, the digging of ditches, pools of stagnant water, the obstruction to the surface-water by throwing it into channels or by damming it up. These are all proper elements to be considered in determining the dam- ages to the land, in its decreased value after the construction of the road.

4. Damage, elements of.

It is perhaps true that if at the time of the trial the road had not been constructed, then the damages must be confined to what might be reasonably anticipated, upon the theory that the road would be constructed in a proper manner; and in that case it could not be expected or anticipated that the road would be so constructed as to dam up the surface-water, or that ditches would be so made as to retain pools of stagnant

water. But where the road is constructed before the trial, plaintiff then had a right to assume that it was constructed as contemplated at the time the right-of-way was condemned, and that its construction was proper; and might show that it did dam up and stop the flow of surface-water; that the ditches retained stagnant pools of water, and that thereby plaintiff was injured.

Counsel also insist that the court erred in giving the following instructions:

"14. The jury, in estimating the value of the land appropriated, will limit the inquiry to a strip 100 feet in width."

"13. If the jury find an amount of damages greater than $510, you will allow 7 per cent. interest on the amount awarded from September 7, 1885; if you find the sum not greater than $510, no interest will be allowed."

The evidence clearly shows that the land appropriated was at least a strip 100 feet in width, and in many places much wider. The evidence of the defendant below clearly showed that the intention was to appropriate and condemn a strip 100 feet wide. It was tried upon that theory, and it seems to have been conceded that the amount of land sought to be taken was a strip 100 feet wide. To the last of these instructions it seems that the only objection thereto is, that the court was by this instruction informing the jury of the amount of the award, as found by the commissioners. We know of no other way in which the court could have informed the jury upon what basis they were to ascertain and allow interest. This instruction did not inform the jury what the award was, but was a direction to them that in case they found for the plaintiff in a greater sum, that they were also to allow the plaintiff interest at 7 per cent. We cannot conceive of any way in which this could have injured the defendant. Plaintiff was properly entitled to interest at 7 per cent.

*5 Interest, allowed.*

The defendant insists that the court erred in rendering a personal judgment on the verdict of the jury. This claim is correct. The judgment should have been to correct the assessment of the commissioners, and to make their award corre-

spond to the amount found by the jury, and an ordinary personal judgment for costs. (See *St. L. L. & D. Rld. Co. v. Wilder*, 17 Kas. 239; *L. & T. Rly. Co. v. Moore*, 24 id. 323.)

It is therefore recommended that the case be remanded to the court below, with the order that the judgment be modified in accordance with the views expressed herein.

By the Court: It is so ordered.

All the Justices concurring.