STATE EX REL. OLSON, Respondent, vs. LAHIFF, Appellant.

*May 4—June 1, 1911.*

*Municipal corporations: Charter construed: "Absence" of mayor: Appointments by acting mayor: Validity.*

1. Where a city charter provides that "during the *absence* of the mayor from the city" the president of the council shall exercise all the powers and discharge all the duties of mayor, the word "absence" means *effective absence*, that is, absence which renders the mayor unable to perform a duty which should be performed at that time.

2. Thus, where the mayor had by law a whole week within which to appoint certain commissioners, his absence from the city on the first day of that week was not an absence as to that particular duty and did not authorize the president of the council to make the appointments.

APPEAL from a judgment of the circuit court for St. Croix county: JAMES WICKHAM, Judge.    *Affirmed.*

This is an action of *quo warranto* to try the title to the office of chief of the fire department of the city of Hudson. The relator claims the office by virtue of an appointment by a board of police and fire commissioners appointed by the mayor of the city, and the defendant by virtue of an appointment by a like board appointed by the president of the council of the city, and the sole question is which board was the legally appointed board.

There is no material dispute as to the facts.    Hudson is a city of the fourth class.    Ch. 187, Laws of 1909 (secs. 959—41*l* to 959—41*n*, Stats.), provided for the appointment by the mayor of a board of police and fire commissioners in cities of the fourth class at some time between the last Monday in April and the first Monday of May, 1910.    The charter of the city of Hudson (ch. 197, Laws of 1885) provides for the election of a president of the city council, and that "during the absence of the mayor from the city, or his inability from

any reason to discharge the duties of his office, the said presi-
dent shall exercise all the powers and discharge all the duties
of mayor." The last Monday in April, 1910, fell on the
25th day of the month. On that day the mayor of the city,
B. W. Utman, went to the city of St. James, Minnesota, in-
tending to return the same evening, but was detained and did
not return to Hudson until April 27th. During such absence
and on the 26th day of April, between the hours of 12 and 1
o'clock a. m., Chris Casanova, the president of the council, as-
sumed to appoint five police and fire commissioners, who took
and filed their oaths of office on the same day, and organized
as a board and adopted rules. On the 1st day of July fol-
lowing, this board appointed the defendant, *Lahiff*, chief of
the fire department of the city, and he qualified and took pos-
session of the office. On April 30, 1910, the mayor appointed
five police and fire commissioners, who qualified and organized
as a board, and appointed the relator to the disputed office
July 1, 1910. The trial court held the relator to have been
duly appointed and entered judgment ousting the defendant,
and the defendant appeals.

The cause was submitted for the appellant on the brief of
*A. J. Kinney*, and for the respondent on a brief signed by
*White & Skogmo*.

Appellant cited, besides cases cited in the opinion, *People
ex rel. Ryan v. Van Anden*, 116 Mich. 654, 74 N. W. 1009;
*Mills v. State ex rel. Smith*, 2 Wash. 566, 27 Pac. 560; *In re
Cleveland*, 51 N. J. Law, 319, 18 Atl. 67, 68, 69; 32 Cyc.
1463; *Wright v. Defrees*, 8 Ind. 298; *McCulloch v. State*, 11
Ind. 424; *Fletcher v. Peck*, 6 Cranch, 87, 130, 131.

WINSLOW, C. J. Appellant's position is this in brief: At
any time between the 25th day of April and the 2d day of
May it was within the power of the mayor of the city of Hud-
son to appoint a board of police and fire commissioners; the
mayor was absent from the city on one of the days during that

period, and under the provisions of the charter the president of the council could exercise "all the powers" of the mayor during that day; hence the appointments made by the president of the council on that day were legal and valid.

The argument is specious, but in our judgment unsound. The provision of the charter quoted was evidently intended to accomplish two objects: *first,* that the duties of the mayor should be performed within the city and not at long range by an absentee official; and, *second,* that in the absence of the mayor from the city there should still be an executive officer present vested with the powers and charged with the duties of mayor.

"Absence" must be construed reasonably, and so construed means, we think, what may be called "effective" absence. If during the mayor's absence from the city, even for a brief time, a riot occurs, or an occasion arises which demands immediate exercise of the executive power to preserve order or enforce the laws, the powers and duties of the mayor to meet the emergency must necessarily be vested in the president of the council fully and completely during the period of the absence.

But a different situation is presented when the mayor has a certain period of time within which to perform an act like the appointment of an officer or the approval of a resolution or ordinance passed by the council. In such cases it is very evident that the time which is allowed the executive is allowed so that he may have opportunity for reflection and weighing of arguments *pro* and *con.* Can it be possible that it was intended that, if the mayor is called from the city for a few hours during this period, the president of the council can step in during his absence and make an appointment or veto an ordinance while the mayor's time for consideration thereof is still unexpired and perhaps only just begun? Few would contend, we think, that the statute was intended by the legislature to accomplish such results, nor do we think that its

wording compels such results. It seems to us that it may properly and logically be said in such a case that with reference to the particular duty in question there has been no absence from the city on the part of the mayor, i. e. no absence which renders him unable to perform that particular duty. Take the present case as a concrete example. The mayor had a whole week in which to make the appointments. He was absent the first day of the week. Presumably he was still considering names of possible appointees and weighing their respective merits. Presumably also he was expecting to make the appointments before the end of the week. It seems absurd to say that by this one day's absence from the city he lost the power which the law vested in him for the entire week, and we therefore hold that there was no absence here within the meaning of the statute with reference to this particular duty. To hold otherwise would be to open the door for unseemly scrambles for power and patronage, not only disgraceful in themselves, but well calculated to seriously impair the efficiency of city government. The same conclusion has been reached under similar statutes elsewhere. *Mayor v. Moran,* 46 Mich. 213, 9 N. W. 252; *Watkins v. Mooney,* 114 Ky. 646, 71 S. W. 622. The case of *State ex rel. Emberson v. Byrne,* 98 Wis. 16, 73 N. W. 320, holds no different doctrine, but by implication supports the conclusion here reached. In that case the mayor was absent from the state during the whole time given him to make the appointment, and attempted to make the appointment while so absent, and it was held (1) that this appointment was void on account of his absence from the city when he attempted to make it, and (2) that an appointment made by the president of the council during such absence was valid. Here was a clear case of an absence which made the mayor unable to perform the duties of his office, and hence opened the way for action by the president of the council. In *O'Malley v. McGinn,* 53 Wis. 353, 10 N. W. 515, the president of the council signed an ordinance passed

by the council. It was stipulated that the mayor was out of the city when the ordinance was passed, and this court said that the ordinance was valid without the approval of the mayor. The evidence did not show how long the mayor's absence continued, and the charter seems only to provide that before an ordinance shall be in force it shall be signed by the mayor, and does not allow the mayor a definite period in which to consider it before approving or disapproving. In the state of the record in that case we think that it must be presumed that the president of the council acted lawfully, that is, that the facts were present which authorized him to sign the ordinance. We do not regard the case as authority against the principle now decided.

*By the Court.*—Judgment affirmed.